Dana M. Herberholz, ISB No. 7440
Jordan L. Stott, ISB No. 9820
Benjamin D. Perkins, GA No. 908313 (*pro hac vice pending*)
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID  83702
Telephone: (208) 562-4900
Email: DHerberholz@parsonsbehle.com
 JStott@parsonsbehle.com
 BPerkins@parsonsbehle.com

Attorneys for J.R. Simplot Company

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>                 Plaintiff,<br><br>v.<br><br>KADYN DEL TORO, an individual,<br><br>                 Defendant. | Case No. 1:22-cv-408<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff J.R. Simplot Company ("Simplot") brings this action against Defendant Kadyn Del Toro ("Del Toro"), alleging as follows:

## **PARTIES**

1. Simplot is a Nevada corporation having its principal place of business at 1099 W. Front Street, Boise, Idaho 83702.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

2. Del Toro is an individual who, upon information and belief, resides in the city of Nampa, Idaho.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Del Toro because he is a resident of the state of Idaho.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Del Toro resides in the judicial district of the Court, a substantial part of the harm and injury giving rise to the dispute occurred in this District, and this Court has personal jurisdiction over each of the parties as alleged herein.

## GENERAL ALLEGATIONS

### Del Toro's Employment with Simplot and His Access to Simplot's Confidential Information and Trade Secrets

6. Since its formation in the late 1920s, Simplot has become one of the leading food and agriculture companies in the United States. Simplot's business touches practically all aspects of farming and food production, both domestically and abroad.

7. A key area of development and opportunity within Simplot is agribusiness. Agribusiness is essentially the marriage between information and data, on the one hand, and farming and food production, on the other.

8. Among other things, Simplot generates and collects data, synthesizes this data into useful analyses, data compilations, and market reports, and provides this information to consumers and other appendages of Simplot.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

9. Simplot uses proprietary sales data (the "Sales Data") and data provided by third parties to produce unique, proprietary analyses, data compilations, and market reports for Simplot's internal use (the "Internal Reports").

10. The Sales Data and Internal Reports created by Simplot allow it to identify, among other things, Simplot's market share within the agricultural and food production industry, consumers with whom Simplot should pursue business opportunities, and opportunities for product development.

11. All Sales Data, as well as the Internal Reports, belong to Simplot.

12. Simplot uses the Internal Reports to pursue business opportunities and support business operations throughout the United States and abroad.

13. Both the Internal Reports and the Sales Data used to compile them have great monetary value. They are not only valuable to Simplot but would also be valuable to any of Simplot's competitors in the agriculture and food production industry.

14. The Sales Data and Internal Reports used by Simplot derive much of their value from being kept secret. They are used to give Simplot a competitive edge in the food and agriculture business; and, if they were made publicly available to Simplot's competitors, much of their value would be lost.

15. On or about October 9, 2017, Simplot hired Del Toro as a program administrator. He was promoted to brand manager in April of 2019, and further promoted to insights and analytics manager in August of 2020.

16. As an insights and analytics manager, Del Toro gained access to Simplot's proprietary Sales Data, as well as existing Internal Reports.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

17. In his position, Del Toro used the Sales Data to generate new proprietary Internal Reports.

18. Del Toro also gained access to, and frequently referred to, proprietary information regarding Simplot's customers, employees, and business partners.

19. The Sales Data Del Toro used to generate Internal Reports is stored in various Simplot databases and is compiled, presented, and stored in computer software called Power BI.

20. The Sales Data within Power BI is only accessible to a handful of employees. Access to the Sales Data is digitally restricted by single sign-on access that uses unique user authentication credentials for each Simplot employee.

21. The Internal Reports Del Toro had access to are stored in one of the following: Power BI, a Microsoft Teams application, or Microsoft OneDrive.

22. Access to the Internal Reports in Power BI and Microsoft Teams is digitally restricted by single sign-on access that uses unique user authentication credentials for each Simplot employee. Only a handful of employees may access the Internal Reports.

23. Access to Microsoft OneDrive is similarly restricted in that it requires unique user authentication credentials to access the information stored in OneDrive. The OneDrive account that Del Toro used while employed at Simplot was only accessible by Del Toro.

### Del Toro's Confidentiality Obligations to Simplot

24. Simplot maintains several employee handbooks and policies that governed Del Toro's use of Simplot's electronics, as well as his use of Simplot's data.

25. For example, Simplot maintains an employee handbook that applied to Del Toro. A copy of Simplot's Employee Handbook that was in effect from January 1, 2021 through July 31, 2022 (the "Employee Handbook") is attached hereto as **Exhibit A**.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

26. The Employee Handbook states at page 10: "All employees must sign and abide by the terms of Simplot's Employee Secrecy and Confidentiality Agreement as a condition of employment. Please refer to Simplot's Global Intellectual Property Policy for more details and educational guidance on intellectual property issues, ownership, and the expectations relating to employee protection of Simplot's intellectual property located on the Company intranet or where Simplot policies are housed."

27. The Employee Handbook also illustrates prohibited conduct that "may result in disciplinary action, up to and including termination of employment." For example, at pages 12 and 13, the Employee Handbook prohibits the following:

- Being dishonest or deceitful with the Company;
- Providing false or misleading information in Company records or reports;
- Using or disclosing Company confidential information or trade secrets in violation of Simplot's Employee Secrecy and Confidentiality Agreement;
- Accessing confidential information without proper authorization;
- Granting unauthorized access to the Company's network, databases, confidential information, or trade secrets;
- Use of Company-owned equipment, vehicles, facilities, materials, or other property for personal or non-Company use without prior permission from a manager or supervisor;
- Embezzlement, misappropriation, or theft of property;
- Engaging in activities that create, or appear to create, a conflict between your personal interests and the Company's interests; and
- Assisting or working for a competing enterprise.

28. The Employee Handbook further states at page 15 that "Employees must return all of Simplot's property immediately upon request or upon termination of employment, including but not limited to […] any and all Company information."

29. Del Toro acknowledged that he had to adhere to the Employee Handbook throughout his employment with Simplot.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

30. Moreover, Simplot maintains a Global Intellectual Property Policy (the "IP Policy"). Del Toro was aware of the IP Policy and participated in training that covered the topics described in the IP Policy.

31. The IP Policy "facilitate[s] the widespread identification of, and use of, the J.R. Simplot Company, its subsidiaries and affiliate[']s […] IP rights."

32. The IP Policy states that "Company employees who leave the Company must be reminded of their confidentiality obligations toward the Company and not take Company IP or confidential information to their new employer."

33. Additionally, Simplot maintains a Code of Conduct, which is attached hereto as **Exhibit B**. The Code of Conduct states:

> Company information and data is valuable to Simplot. All employees must protect Company information that is not intended to be publicly disclosed. Employees must not disclose confidential Company information, such as research and development activities, sales and profit reports, marketing plans, manufacturing processes, potential acquisitions or investments and/or prices paid for supply and other trade secrets. All employees should respect the confidentiality and privacy of the personal information of others.

34. Del Toro acknowledged that he received the Code of Conduct and reviewed its contents.

35. Finally, Simplot maintains a conflict of interest policy (the "COI Policy"), which is attached hereto as **Exhibit C**. It states that:

> [n]o Employee may misappropriate, for personal gain, or for the gain of others, any information obtained as a result of employment and not available in the public domain, nor may the Employee disclose this information. All salaried Employees and select hourly Employees may be required to sign a "Employee Secrecy and Confidentiality Agreement" as a condition of employment.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

### Del Toro Accepts a Job with a Direct Competitor
### and Takes Simplot's Confidential Information and Trade Secrets

36. While employed by Simplot, Del Toro began searching for new employment as early as May 18, 2022.

37. In June 2022, Del Toro interviewed with another agriculture and food production company, Wilbur-Ellis Company LLC ("Wilbur-Ellis").

38. On or about June 23, 2022 and June 24, 2022, Del Toro created documents, using the electronic devices Del Toro was given to use during his employment, called "WE Sales Analysis" and "WE Data."

39. Upon information and belief, as part of the hiring process at Wilbur-Ellis, Del Toro analyzed certain data that Wilbur-Ellis provided him.

40. Upon information and belief, the data that Wilbur-Ellis sent Del Toro was contained in the "WE Data" file described above.

41. Upon information and belief, Del Toro inserted the data Wilbur-Ellis sent him into a proprietary visualization dashboard generated by Simplot and thereby created the above-described "WE Sales Analysis" file.

42. Upon information and belief, Del Toro transmitted or otherwise disclosed the contents of the "WE Sales Analysis" file to Wilbur-Ellis as part of his application for employment.

43. Del Toro was not permitted to import the "WE Data" into Simplot's systems. Nor was he permitted to use Simplot's visualization dashboard for activities unrelated to his position with Simplot.

44. On July 5, 2022, Del Toro received an offer to work for Wilbur-Ellis. On or about July 7, 2022, Del Toro accepted an offer with Wilbur-Ellis as a "Strategic Business Analyst."

45. After accepting the offer to work for Wilbur-Ellis, Del Toro continued to work for Simplot but did not inform Simplot that he had accepted the offer from Wilbur-Ellis until his resignation from Simplot on July 22, 2022.

46. Wilbur-Ellis is a direct competitor of Simplot.

47. As mentioned above, Wilbur-Ellis is an agriculture and food production company. Wilbur-Ellis also has an agribusiness component that offers services which overlap substantially with the services offered by Simplot.

48. While employed by Simplot, Del Toro was given several electronic devices on which to work, including a smart phone device (the "iPhone"), a tablet device (the "iPad"), and a computer (the "Computer").

49. Del Toro was able to access work information on his iPhone, including his work emails, work contacts, and Power BI (the program where at least some of the Sales Data and Internal Reports are stored).

50. As early as April 27, 2022, while still employed by Simplot, Del Toro created digital copies of (or "backed up") the information on his work Computer and iPhone to multiple external storage devices (the "USB Devices").

51. On July 14, 2022, after Del Toro accepted a new position with Wilbur-Ellis, but before he departed from his position at Simplot, Del Toro created a new digital copy of the information on his work iPhone and work Computer and stored it on his USB Devices.

52. The digital copies of the Computer and iPhone that Del Toro uploaded to the USB Devices contain an enormous amount of information. Indeed, there are approximately 172,000 individual files on the USB Devices.

53. Among these files, there are *many* competitively sensitive Internal Reports, as well as confidential Sales Data, that belong to Simplot.

54. Examples of the Sales Data and Internal Reports contained on the USB Devices include:

- Sales reports and customer sales data;
- Capital allocation analyses;
- Market growth reports;
- Information related to Simplot's business units and sales teams;
- Information related to lead generation programs;
- Information related to businesses that Simplot was interested in acquiring;
- Information related to Simplot's highest-paying, top customers; and
- Password lists.

55. The Sales Data and Internal Reports described above are generated internally by Simplot and are kept confidential. They are not for sale or otherwise publicly available.

56. Moreover, as explained above, access to the Sales Data and Internal Reports that Del Toro uploaded to the USB Devices is restricted to only a few employees and is digitally protected by user authentication credentials and single sign-on access.

57. The information Del Toro uploaded to the USB Devices would be extremely valuable to Simplot's competitors, including Wilbur-Ellis.

**Del Toro Lies During His Simplot Exit Interview**

58. Del Toro's last day of employment with Simplot was July 22, 2022. On his last day with Simplot, Del Toro participated in an exit interview.

59. During the exit interview, a human resources manager at Simplot, Carla Romero-Erlanson, asked Del Toro if he understood that he could not take any documents or computer files that pertain to Simplot's business with him. He confirmed that he understood.

60. Moreover, at the exit interview, Del Toro signed a document in which he represented that he had no documents in his possession, custody, or control pertaining to Simplot's

business (other than documents and information that pertain to pay, benefits, or terms and conditions of employment). A copy of the document Del Toro signed is attached hereto as **Exhibit D**.

61. As explained above, despite his representations, Del Toro was in fact in possession of the USB Devices which contained Simplot's highly confidential and competitively sensitive information, including the Sales Data and Internal Reports.

### After Resigning from Simplot, Del Toro Continues Using Simplot's Proprietary Sales Data and Internal Reports

62. Not only did Del Toro lie about his retention of Simplot's business information, but he also continued to interact with Simplot's Sales Data and Internal Reports after he separated from Simplot.

63. Del Toro interacted with Simplot's proprietary information on the USB Devices as late as August 3, 2022, more than two weeks after he left Simplot and more than a month after accepting a position with Wilbur-Ellis.

64. For example, on or about August 3, 2022, Del Toro accessed files on the USB Devices titled "Top Product Sales Report," "SGS Employee List," "Locations with Crop Advisors," and "2019-2022 Customer Seed Sales," along with several other confidential Simplot files.

65. As Del Toro was no longer employed by Simplot on August 3, 2022, he did not access these files for Simplot's benefit. Rather, upon information and belief, Del Toro accessed these files for his own benefit and for the benefit of Wilbur-Ellis.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

### Del Toro Breaches His Employee Secrecy and Confidentiality Agreement

66. On or about October 9, 2017, when Del Toro began his employment with Simplot, he signed an Employee Secrecy and Confidentiality Agreement ("Confidentiality Agreement"). The Confidentiality Agreement is attached hereto as **Exhibit E**.

67. The Confidentiality Agreement contains several relevant provisions, including that "[e]mployee agrees that he/she will not access, use, or disclose to any individual, business, third party contracting or working with [Simplot], or [any] other entity, [Simplot's] Confidential Information, including but not limited to Trade Secrets and Company Intellectual Property in any manner, directly or indirectly […]."

68. The Confidentiality Agreement further states that "[a]ll Confidential Information that is disclosed or provided to Employee, or prepared by Employee, will remain [Simplot's] property at all times."

69. The Confidentiality Agreement also states that "[u]pon termination of Employee's employment for any reason, and at any time upon [Simplot's] request, Employee will promptly return to [Simplot] all of [Simplot's] property, including all originals and copies of Confidential Information, including but not limited to Trade Secrets and Company Intellectual Property, whether contained in any kind of tangible or intangible format."

70. The Confidentiality Agreement defines "Confidential Information" as "all nonpublic or proprietary information […] that arises from or related to any aspect of the business of [Simplot], its subsidiaries and affiliates" and includes information concerning: "business practices and procedures; competitive position; [...] technical, manufacturing, marketing, distribution, and pricing approaches; [...] and current and potential customers and suppliers."

71. Simplot's trade secrets and intellectual property are also considered "Confidential Information" under the Confidentiality Agreement.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

72. In addition, the Confidentiality Agreement states that "[e]mployee is under an obligation to assign and hereby does assign to [Simplot] any and all intellectual property the Employee invents, creates, or conceives or otherwise develops during Employee's course of employment with [Simplot]."

73. Finally, by executing the Confidentiality Agreement, Del Toro acknowledged that "a violation of this Agreement may result in harm to [Simplot] that cannot be easily quantified" and that "[Simplot] may go to court for equitable remedies (like an injunction or restraining order) as well as to recover any damages from Employee that result from any violation of this Agreement."

74. As explained above, Del Toro uploaded and retained Simplot's proprietary Sales Data and Internal Reports on his USB Devices after his termination. He continued to interact with Simplot's information after he left Simplot. This conduct breached the Confidentiality Agreement.

## FIRST CLAIM FOR RELIEF
**Breach of Contract**

75. The allegations of paragraphs 1 through 74 above are restated and incorporated by reference as though fully set forth herein.

76. The Confidentiality Agreement is a binding and valid contract that Del Toro freely and voluntarily executed.

77. Under the Confidentiality Agreement, upon his separation from Simplot, Del Toro was to return all confidential information to Simplot.

78. Del Toro downloaded Simplot's confidential business information to certain USB Devices; and upon his separation from Simplot, he did not return the confidential business information to Simplot.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

79. Moreover, Del Toro continued to interact with and access Simplot's confidential business information that existed on the USB devices after he left Simplot.

80. Del Toro's actions constitute a breach of the Confidentiality Agreement.

81. Del Toro acknowledged that such a breach would cause Simplot harm that is not easily quantified.

82. Del Toro's breach has in fact caused Simplot harm, including but not limited to the devaluation of Simplot's confidential business information.

## SECOND CLAIM FOR RELIEF
### Violation of the Federal Defend Trade Secrets Act
### (18 U.S.C. § 1836)

83. The allegations of paragraphs 1 through 82 above are restated and incorporated by reference as though fully set forth herein.

84. Simplot's Sales Data and Internal Reports derive much of their value from not being generally known to, or readily ascertainable by, other entities who could obtain economic value from their disclosure or use.

85. Simplot takes several measures to keep the Sales Data and Internal Reports secret, including, for example, restricting access to the Sales Data and Internal Reports to only a handful of employees, all of whom must use unique user authentication credentials and single sign-on access programs to access the information.

86. Simplot also protects the secrecy of the Sales Data and Internal Reports by requiring employees to sign a Confidentiality Agreement that protects the information.

87. Moreover, Simplot requires employees to acknowledge the Simplot Code of Conduct, the Employee Handbook, and the COI Policy. Del Toro was also trained on the IP Policy. Each of these handbooks and policies are aimed at protecting Simplot's information.

88. The Sales Data and Internal Reports are trade secrets used throughout the United States and abroad and are thus used in interstate and foreign commerce.

89. Simplot prohibited Del Toro from retaining the Sales Data and Internal Reports after termination of his employment with Simplot.

90. Del Toro had a contractual and fiduciary duty to maintain the secrecy of the Sales Data and Internal Reports.

91. Del Toro acquired the Sales Data and Internal Reports by retaining them on USB Devices in violation of his contractual and fiduciary duties.

92. Del Toro created copies of the Sales Data and Internal Reports in anticipation of terminating his employment with Simplot.

93. Del Toro also falsely represented to Simplot that he had not retained any confidential information at his exit interview. Accordingly, Del Toro acquired the Sales Data and Internal Reports by misrepresentation.

94. Del Toro intended to convert the Sales Data and Internal Reports for his own economic benefit, knowing that such conversion would harm Simplot, when he copied, retained, and appropriated the Sales Data and Internal Reports without Simplot's permission to do so. Accordingly, Del Toro acquired the Sales Data and Internal Reports by theft.

95. Del Toro misappropriated the Sales Data and Internal Reports.

96. Del Toro's misappropriation of Simplot's Sales Data and Internal Reports has damaged Simplot by, among other things, devaluing Simplot's information.

97. Del Toro's misappropriation was willful and malicious, thereby requiring Del Toro to pay exemplary damages to Simplot in an amount to be determined by the Court, pursuant to 18 U.S.C. § 1836.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**

## THIRD CLAIM FOR RELIEF
### Violation of the Idaho Trade Secrets Act
**(Idaho Code § 48-801 et seq.)**

98. The allegations of paragraphs 1 through 97 above are restated and incorporated by reference as though fully set forth herein.

99. Simplot's Sales Data and Internal Reports derive much of their value from not being generally known to, or readily ascertainable by, other entities who could obtain economic value from their disclosure or use.

100. Simplot takes several measures to keep its Sales Data and Internal Reports secret, including, for example, restricting access to the Sales Data and Internal Reports to only a handful of employees, all of whom must use unique user authentication credentials and single sign-on access programs to access the information.

101. Simplot also protects the secrecy of the Sales Data and Internal Reports by requiring employees to sign a Confidentiality Agreement that protects the information.

102. Moreover, Simplot requires employees to acknowledge the Simplot Code of Conduct, the Employee Handbook, and the COI Policy. Del Toro was also trained on the IP Policy. Each of these handbooks and policies are aimed at protecting Simplot's information.

103. The Sales Data and Internal Reports are trade secrets.

104. Simplot prohibited Del Toro from retaining the Sales Data and Internal Reports after termination of his employment with Simplot.

105. Del Toro had a contractual and fiduciary duty to maintain the secrecy of the Sales Data and Internal Reports.

106. Del Toro acquired the Sales Data and Internal Reports by retaining them on USB Devices in violation of his contractual and fiduciary duties.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 15**

107. Del Toro also falsely represented that he had not retained any confidential information at his exit interview. Accordingly, Del Toro acquired the Sales Data and Internal Reports by misrepresentation.

108. Del Toro intended to exercise control over the Sales Data and Internal Reports to acquire their economic value when he deceived Simplot by representing that he had not retained any confidential information at his exit interview. Accordingly, Del Toro acquired the Sales Data and Internal Reports by theft.

109. Del Toro knowingly exercised unauthorized control over the Sales Data and Internal Reports, which belong to Simplot. Accordingly, Del Toro acquired the Sales Data and Internal Reports by theft.

110. Del Toro misappropriated the Sales Data and Internal Reports.

111. Del Toro's misappropriation of Simplot's Sales Data and Internal Reports has damaged Simplot by, among other things, devaluing Simplot's information.

### FOURTH CLAIM FOR RELIEF
### Breach of the Duty of Loyalty

112. The allegations of paragraphs 1 through 111 above are restated and incorporated by reference as though fully set forth herein.

113. As Simplot's employee, Del Toro owed Simplot a duty of loyalty.

114. While still employed by Simplot, Del Toro downloaded Simplot's Sales Data and Internal Reports to USB Devices for his own benefit and, upon information and belief, for the benefit of Simplot's competitors.

115. Del Toro retained the information he downloaded to USB Devices, knowing that he was contractually prohibited from doing so, for his own benefit and, upon information and belief, for the benefit of Simplot's competitors.

116. Such conduct violated the Employee Handbook, as well as the Code of Conduct, the COI Policy, and the IP Policy.

117. At his exit interview, Del Toro affirmatively represented that he had not retained any of Simplot's business information, when in fact he had.

118. By downloading and retaining Simplot's Sales Data and Internal Reports for his own benefit and, upon information and belief, the benefit of Simplot's competitors, Del Toro breached the duty of loyalty he owed Simplot.

119. Del Toro's breach of his duty of loyalty has damaged Simplot.

120. Del Toro also breached his duty of loyalty to Simplot when he impermissibly uploaded Wilbur-Ellis' data into Simplot's proprietary visualization dashboard and used that dashboard to create an analysis that was, upon information and belief, part of his application for employment at Wilbur-Ellis.

121. This breach has also damaged Simplot in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### Conversion

122. The allegations of paragraphs 1 through 121 above are restated and incorporated by reference as though fully set forth herein.

123. Del Toro wrongfully gained control and dominion over Simplot's property when Del Toro downloaded and retained the Sales Data and Internal Reports in violation of his contractual and fiduciary duties.

124. The Sales Data and Internal Reports are personal property that belong to Simplot. Del Toro acknowledged as much in his Confidentiality Agreement.

125. Del Toro's conversion of the Sales Data and Internal Reports has damaged Simplot in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Simplot demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

Simplot respectfully requests that this Court enter judgment in its favor on each and every claim set forth above and award them relief including, but not limited to, the following:

1. A permanent injunction enjoining Del Toro from directly or indirectly accessing, using, disseminating, or disclosing any information belonging to Simplot, including the Sales Data, Internal Reports, and any other information existing on the USB Drives;

2. An order requiring Del Toro to return all trade secret, confidential or proprietary information of any nature, owned by Simplot;

3. Judgment in favor of Simplot and an award of damages, including compensatory and exemplary damages, in an amount to be determined at trial;

4. An award of any and all expenses Simplot has incurred in bringing this action and will incur in pursuing this action, including, but not limited to, costs, interest, and attorneys' fees, including all attorneys' fees recoverable under Idaho Code §§ 12-120 and/or 121; and

5. Such other and further relief as the Court deems just and proper.

DATED THIS 27th day of September, 2022.

PARSONS BEHLE & LATIMER

By /s/ Dana M. Herberholz
    Dana M. Herberholz
    Jordan L. Stott
    Benjamin D. Perkins (*pro hac vice pending*)
Attorneys for J.R. Simplot Company

**COMPLAINT AND DEMAND FOR JURY TRIAL - 18**