# Exhibit E

## EMPLOYEE SECRECY AND CONFIDENTIALITY AGREEMENT

The parties to this Employee Secrecy and Confidentiality Agreement ("Agreement") are J. R. Simplot Company with its principal business offices located at 999 Main Street, Boise, ID 83702 (the "Company"), and ___Kalyn Del Toro___ ("Employee").

1. **Background.** The Company wishes to hire Employee or continue to employ Employee. The parties understand that in the course of employment with the Company, Employee will have access to or obtain knowledge of the Company's Confidential Information and Trade Secrets, including but not limited to confidential and sensitive information about the Company's products, methods, plans, customers, sources, personnel, and financial data. To protect its interests in its valuable Confidential Information and Trade Secrets, the Company requires Employee to enter into this Agreement as a condition of employment (or continued employment).

2. **Effective Date.** This Agreement will become effective immediately on the date that Employee signs it.

3. **Definitions.** The following definitions apply for purposes of this Agreement:

   A. "Confidential Information" means all nonpublic or proprietary information (in any tangible or intangible format, including all copies and forms of storage,) that arises from or relates to any aspect of the business of the Company, its subsidiaries and affiliates, whether the Confidential Information is in the possession of the Company or of any other individual, business, or entity. Confidential Information includes, but is not limited to, information concerning:

   i. The Company's organization; ownership; finances, financial structure, and financial condition; assets and liabilities; directors, officers, and employees; stockholders, investors, creditors, advisors, consultants, contractors, agents, and representatives; and

   ii. The Company's operations, interest, and plans (including, among other matters, information material concerning business practices and procedures; competitive position; trade secrets; product concepts, designs, blueprints, plans, and drawings; research and development plans and test results; practical and theoretical knowledge and techniques; production capacity and equipment; product development plans; technical, manufacturing, marketing, distribution, and pricing approaches; material sources and costs; land acquisition and development plans and costs, building acquisition and renovation plans and costs, and resale or other disposition plans and prices; financing plans, arrangements, and activities; and current and potential customers and suppliers); and

   iii. The Company's communications with its legal counsel, its legal department files; its internal self-audits, self-evaluations, self-analysis, and regulatory compliance efforts; and its efforts to defend, avoid, or protect against unlawful activities directed against the Company's assets, products, directors, officers, or employees; and

   iv. Payroll and human resources information, including but not limited to individual employee compensation, benefits, performance, and medical information; and

   v. Trade Secrets and Company Intellectual Property, as defined below.

   B. "Trade Secret" means Company information, including a formula, pattern, compilation, program, computer program, device, method, technique, or process, that: (i) derives independent economic value, either actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

   C. "Company Intellectual Property" means any inventions (whether patentable or not), secret processes or trade secrets, know-how, copyrights, or trademarks, or any other intellectual property, developed partially or entirely by Employee in the course of employment with this Company.

4. **Protection of the Company's Confidential Information, including Trade Secrets and Company Intellectual Property.** Employee acknowledges and agrees that the Company's Confidential Information, including but not limited to Trade Secrets and Company Intellectual Property is of substantial value to the Company, provides the Company with a substantial competitive advantage in its business, is and has been maintained in strict confidence by the Company, and the rights to all Confidential Information, including but not limited to Trade Secrets and Company Intellectual Property belong exclusively to the Company.

Employee agrees that he/she will not access, use, or disclose to any individual, business, third party contracting or working with the Company, or other entity, the Company's Confidential Information, including but not limited to Trade Secrets and Company Intellectual Property in any manner, directly or indirectly, unless Employee is 1) authorized to do so as part of Employee's regular employment with the Company, 2) expressly authorized to do so in writing and in advance by the Company, or 3) expressly ordered to do so by a court or agency of competition jurisdiction. These restrictions do not apply to any Confidential Information that has been made generally available to the public by the Company or that becomes generally available to the public through some other proper course of events. All Confidential Information that is disclosed or provided to Employee, or prepared by Employee, will remain Employer's property at all times.

Notwithstanding the foregoing nondisclosure obligations, pursuant to 18 USC Section 1833(b), Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made: (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

5. <u>Intellectual Property</u>.  Employee acknowledges that as a condition of employment with the Company, Employee is under an obligation to assign and hereby does assign to the Company any and all intellectual property the Employee invents, creates, or conceives, or otherwise develops during Employee's course of employment with the Company.  Employee hereby acknowledges that the Company is the real party in interest for any Company Intellectual Property and hereby appoints the Company as attorney-in-fact, with powers to execute all necessary documents, including the execution of substitute statements.

6. <u>Remedies</u>. Employee understands and acknowledges that a violation of this Agreement may result in harm to the Company that cannot be easily quantified. A violation of this Agreement also may result in discipline, up to and including termination of Employee's employment. In addition, the Company may go to court for equitable remedies (like an injunction or restraining order) as well as to recover any damages from Employee that result from any violation of this Agreement, including but not limited to the Company's costs and attorneys' fees, and all remedies that are available under the Idaho Trade Secrets Act, Idaho Code §§ 48.801, et seq. and/or other applicable law.

7. <u>Return of the Company's Property</u>. Upon termination of Employee's employment for any reason, and at any time upon the Company's request, Employee will promptly return to the Company all of the Company's property, including all originals and copies of Confidential Information, including but not limited to Trade Secrets and Company Intellectual Property, whether contained in any kind of tangible or intangible format.

8. <u>Modification</u>. This Agreement can be modified or terminated only through a written agreement that is signed by both Employee and an authorized representative of the Company, and that states that it is intended to modify or terminate this Agreement.

9. <u>No Implied Waiver</u>. A waiver by the Company of a violation of any part of this Agreement is not intended to be a waiver of any previous and/or subsequent violation or violations.

10. <u>Severability</u>. The parties intend that each provision of this Agreement will be treated as separate and independent, and if a court or agency finds that any part of this Agreement is unenforceable, the remainder of the Agreement should be enforced to the maximum extent according to its terms. If a court or agency concludes that any provision in this Agreement is unenforceable, the parties also intend for the court or agency to interpret that provision by limiting or reducing it to a minimum extent necessary to make it and the rest of the Agreement legally enforceable.

11. <u>Duration</u>. Employee understands and acknowledges that a violation of this Agreement would cause substantial harm to the Company's operations, business, and/or goodwill.  The parties understand and agree that this Agreement will continue in full force and effect (1) throughout Employee's employment with the Company, and (2) after termination of that employment for any reason.

12. <u>Employment at Will</u>. Employee understands and acknowledges that this Agreement is not intended to create an employment contract between Employee and the Company, and that Employee will be at all times an employee at will, meaning that either Employee or the Company may end the relationship at any time, with or without cause.

13. <u>Section 7 Rights</u>. By deeming "employee" information, "payroll and human resources information," and other similar information as "Confidential Information," the Company does not intend to interfere with, restrain or coerce the Employee's right to engage in concerted activity, including the right to discuss wages, hours, working conditions or other terms and conditions of employment with the Company, or in any way limit the Employee's Section 7 rights under the National Labor Relations Act.

14. <u>Choice of Law</u>. This Agreement will be interpreted and enforced under the substantive laws of the State of Idaho, excluding its choice of law rules.

I have read this Agreement and agree to be bound by it.

_[signature]_
Employee Signature

Kadyn Del Toro
Employee Name (please print)

Date: 10/9/17

7001 0915
Employee No.